**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOSE B. DIAZ MORALES,** | |
| **Plaintiff,** | |
| **v.** | **Crim. No. 15-1096 (GAG)** |
| **COMMONWEALTH OF PUERTO RICO et. al,** | |
| **Defendants.** | |

**OPINION AND ORDER ON MOTION FOR RECONSIDERATION**

On February 3, 2015, Plaintiff José B. Díaz filed a pro se complaint in this court against the Commonwealth of Puerto Rico, the Puerto Rico Police Department ("PRPD"), and agent Adriel Jiménez Rivera ("Rivera"), alleging a violation of his Fourth Amendment rights pursuant to § 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983. (See Docket No. 1.) Plaintiff claims that the defendants violated his rights when Rivera shot him in his left arm following a confrontation between Plaintiff and another person at the Centro Medico Rio Piedras train station in San Juan. (Id.) On March 20, 2015, this court issued an Order that summarily dismissed Plaintiff's claim for damages against the Commonwealth of Puerto Rico and the Puerto Rico Police Department, reasoning that the Eleventh Amendment of the United States Constitution precludes such suits for damages in federal courts. (See Docket No. 5.) As such, only Plaintiff's claim against agent Adriel Jiménez Rivera survived. (Id.)

Thereafter, on March 23, 2015, the court appointed pro bono counsel for Plaintiff pursuant to Local Rule 83(L). (Docket Nos. 7 and 10.) Four months later, Plaintiff filed a motion for reconsideration of the court's Order at Docket No. 5, in which it dismissed the Commonwealth and Puerto Rico Police Department from this case. (Docket No. 23.) In his motion presently before

Civil No. 15-1096 (GAG)

the court, Plaintiff argues that recent cases by the First Circuit and Puerto Rico Supreme Court have significantly eroded the established First Circuit case law which holds that Eleventh Amendment sovereign immunity applies to the Commonwealth of Puerto Rico.  (Docket No. 23 at 8-15.)  The recent cases that Plaintiff highlights respectfully hold that that the Tenth Amendment does not apply to the Commonwealth and that the same is not a dual sovereign for double jeopardy purposes.  See Franklin California Tax-Free v. Commonwealth of Puerto Rico, __ F.3d __, No. 15-1218, 2015 WL 4079422 at *14 (1st Cir. June 6, 2015) ("[t]he limits of the Tenth Amendment do not apply to Puerto Rico, which is '*constitutionally* a territory,'") (emphasis in original); Pueblo v. Sánchez Valle, No. 2013-68, 2015 TSPR 25, 2015 WL 1317010 at 2 (P.R. Mar. 20, 2015) ("pursuant to the constitutional protection against double jeopardy, and because Puerto Rico is not a federal state, a person who has been acquitted, convicted or prosecuted in federal court cannot be prosecuted for the same offense in the Puerto Rico courts") (official translation).  Using these cases as support, Plaintiff contrasts the immunity granted to the States by the common-law doctrine of sovereign immunity and the immunity created by the Eleventh Amendment, arguing that although Puerto Rico enjoys the former, recent developments in the law reveals that it is no longer is entitled to the latter.  (Docket No. 23 at 10-15.)

Upon reviewing Plaintiff's submission and the pertinent law along with the history of the unique relationship between the United States and the Commonwealth of Puerto Rico, the court **DENIES** the Plaintiff's Motion for Reconsideration at Docket No. 23.

**I.    Standard of Review**

A motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the court.  Villanueva-Mendez v. Vazquez, 360 F. Supp. 2d 320, 322 (D.P.R. 2005).  It is also a long-standing rule that motions for reconsideration cannot be used to

Civil No. 15-1096 (GAG)

bring forth new arguments.  See Nat'l Metal Finishing Co., Inc. v. Barclays Am./Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (holding that motions for reconsideration may not be used "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier").  These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law.  See Rivera Surillo & Co. v. Falconer Glass. Indus. Inc., 37 F.3d 25, 29 (1st Cir. 1994).

Accordingly, for a motion for reconsideration to be granted, the court recognizes only three possible grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law."  See Torres v. Gonzalez, 980 F. Supp. 2d 143, 147 (D.P.R. 2013).  "In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."  11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed.) (2012); Rivera v. Meléndez, 291 F.R.D. 21, 23 (D.P.R. 2013) (denying motion for reconsideration when "plaintiff's clear intention is to achieve yet another bite at the apple, and continue this litigation by ignoring and/or refusing this Court's ruling").

**II.    Discussion**

The court finds that it need not correct any manifest error of law despite the recent developments in the law, nor is re-litigation of the same issue already analyzed in forming its Order at Docket No. 5 warranted.  Nevertheless, the court will address Plaintiff's arguments, more so because the same are now raised by pro bono counsel in an elaborate manner.

In moving for reconsideration, Plaintiff argues that there is a difference between common-law sovereign immunity and the immunity granted by the Eleventh Amendment.  (Docket No. 23 at 10-12.)  He then recognizes that for decades the United States Supreme Court and First Circuit

3

**Civil No. 15-1096 (GAG)**

have held that Puerto Rico enjoys common-law sovereign immunity from private suit, and did so even before the establishment of the Commonwealth in 1952. (Id.) Plaintiff further emphasizes that the First Circuit has expressly held that Puerto Rico enjoys the shelter of Eleventh Amendment immunity just like the States, although the Supreme Court has never opined on this matter. (Id. at 11-12.) He then argues that in light of recent precedent, Puerto Rico is no longer a dual sovereign with respect to the United States and its powers are not those reserved to the States, but those specifically granted to it by Congress. (Id. at 12-14.) As such, Plaintiff posits that because Puerto Rico is no longer recognized as a sovereign entity, but rather is a mere territory of the United States, it cannot enjoy the rights specifically reserved to the States under the Eleventh Amendment. (Id. 13-15.) Therefore, Plaintiff argues that the intervening change in the law requires this court to reconsider its Order at Docket No. 5.

     A.   <u>Sovereign Immunity and the Eleventh Amendment Generally</u>

     Since before the ratification of the United States Constitution, the States have enjoyed immunity from private suits. See <u>Alden v. Maine</u>, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). This fundamental principle of sovereignty has its roots in English common law, which holds that the Crown cannot be sued without consent in its own courts. Id. (citing <u>Chisholm v. Georgia</u>, 2 Dall. 419, 437-446, 1 L. Ed. 440 (1793)); <u>Nevada v. Hall</u>, 440 U.S. 410, 414, 99 S. Ct. 1182, 59 L. Ed. 2d 416 (1979) ("The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that immunity."). The States' immunity from private suit is grounded upon "a defining feature of our Nation's constitutional blueprint," that being the principle of dual sovereignty. <u>Fed. Mar. Comm'n v. S. Carolina State Ports Auth.</u>, 535 U.S. 743, 751, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002). As such, upon ratification of the

Civil No. 15-1096 (GAG)

Constitution, the States "did not consent to become mere appendages of the Federal Government." Id.

Although, the Supreme Court now recognizes that the ratification of the Constitution "did not disturb States' immunity from private suits, thus firmly enshrining this principle in our constitutional framework," Fed. Mar. Comm'n, 535 U.S. at 752, this immunity "fell into peril in the early days of our Nation's history when [the Supreme Court] held in Chisholm v. Georgia, 2 Dall. 419, 1 L. Ed. 440 (1793), that Article III authorized citizens of one State to sue another State in federal court." Fed. Mar. Comm'n, 535 U.S. at 752.  The Chisholm Court took a literal reading of Article III to mean that the Founders intended to permit a citizen of one state to sue a different state in federal court.  Id.  After all, the language does allow for cases "between a State and a citizen of another State."  U.S. CONST. art. III., § 2.

The Court's decision "fell upon the country with profound shock," and, a result, Congress passed the Eleventh Amendment in a remarkably quick fashion, followed by the States' ratification with the same haste.  See Fed. Mar. Comm'n, 535 U.S. at 752-53.  In promulgating the Eleventh Amendment, Congress clarified that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  Since then, the Supreme Court has recognized repeatedly that Chisholm was erroneously decided.  See, e.g., Fed. Mar. Comm'n, 535 U.S. at 753; Alden, 527 U.S. at 721-22. Despite the narrowness of the Eleventh Amendment's terms, being that on its face it only bars claims by a citizen against a different State in federal court, the Supreme Court has interpreted the Amendment broadly, to hold that States are also immune from suits brought by one of their own

Civil No. 15-1096 (GAG)

citizens.[1]  See Hans v. Louisiana, 134 U.S. 1, 20, 10 S. Ct. 504, 33 L. Ed. 842 (1890); Alden, 527 U.S. at 727-28.

In recent decades, the Court has also clarified that despite centuries of referring to sovereign immunity and Eleventh Amendment interchangeably, the two concepts are not synonymous; rather, sovereign immunity is a much broader concept than the terms of the Eleventh Amendment.  See, e.g., Fed. Mar. Comm'n, 535 U.S. at 753; Alden, 527 U.S. at 722-29; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997). Specifically, the Court has recognized that "[i]nstead of explicitly memorializing the full breadth of the sovereign immunity retained by the States when the Constitution was ratified, Congress chose in the text of the Eleventh Amendment only to 'address the specific provisions of the Constitution that had raised concerns during the ratification debates and formed the basis of the Chisholm decision.'"  Fed. Mar. Comm'n, 535 U.S. at 753 (quoting Alden, 527 U.S. at 723). Therefore, the Court has made explicit that the purpose of the Eleventh Amendment was not to add to the principles of common-law sovereign immunity, but to overrule the Court's decision in Chisholm and extinguish any confusion over the language regarding judicial power in Article III.

As such, "the Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."  Fed. Mar. Comm'n, 535 U.S. at 753 (citing Blatchford v. Native Vill. of Noatak & Circle Vill., 501 U.S. 775, 779, 111 S. Ct.

---

[1] The Court has also expanded the Eleventh Amendment to provide States immunity from private suits in admiralty, despite the language only expressly barring "any suit in law or equity."  See California v. Deep Sea Research, Inc., 523 U.S. 491, 502-503, 118 S. Ct. 1464, 140 L. Ed. 2d 626 (1998).  The court further notes that there are, of course, important exceptions to the principles of sovereign immunity.  For example, sovereign immunity does not bar suits against a state brought by the United States, see Hudson Sav. Bank v. Austin, 479 F.3d 102, 106 (1st Cir. 2007) (citing Employees of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 286, 93 S. Ct. 1614, 36 L. Ed. 2d 251 (1973)), or by another State, see Kansas v. Colorado, 533 U.S. 1, 7, 121 S. Ct. 2023, 2027, 150 L. Ed. 2d 72 (2001), or by a citizen for prospective injunctive relief against state officials in their official capacity to enjoin an ongoing violation of federal rights.  See Stewart, 131 S. Ct. at 1638 (citing Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  None of these exceptions, however, are relevant to the present case.

Civil No. 15-1096 (GAG)

2578, 115 L. Ed. 2d 686 (1991) ("we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms")); see also Alden, 527 U.S. at 713 ("We have . . sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity.'  The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.").[2]  "[The] Amendment confirmed, farther than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design."[3]  Alden, 527 U.S. at 728-29; see also Coeur d'Alene Tribe of Idaho, 521 U.S. at 267-68 (recognizing "the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying"); Virginia Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1637-38, 179 L. Ed. 2d 675 (2011) ("we have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact").[4]

---

[2] See also Coeur d'Alene Tribe of Idaho, 521 U.S. 261 at 267-68 ("To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying, we have extended a State's protection from suit to suits brought by the State's own citizens.") (citing Hans v. Louisiana, 134 U.S. at 10) (emphasis added).

[3] "Manifestly, we cannot rest with a mere literal application of the words of section 2 of article 3, or assume that the letter of the Eleventh Amendment exhausts the restrictions upon suits against nonconsenting States.  Behind the words of the constitutional provisions are postulates which limit and control.  There is the essential postulate that the controversies, as contemplated, shall be found to be of a justiciable character.  There is also the postulate that States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been 'a surrender of this immunity in the plan of the convention.'"  Principality of Monaco v. State of Mississippi, 292 U.S. 313, 322-23, 54 S. Ct. 745, 78 L. Ed. 1282 (1934) (quoting The Federalist No. 81) (footnote omitted).

[4] Additionally, the Court has established that Congress may abrogate a State's immunity from suit without its consent when Congress acts under section 5 of the Fourteenth Amendment, but not when it acts under its original Article I authority to regulate commerce.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 59, 65-66, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  As the present case is brought under 42 U.S.C. § 1983, however, the court need not engage in the question of whether that statute would constitute sufficient abrogation of Puerto Rico's immunity because the Court has made clear that neither states nor territories are "persons" under section 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45 (1989); Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 597, 96 S. Ct. 2264, 2279, 49 L. Ed. 2d 65 (1976)

Civil No. 15-1096 (GAG)

   B.   Puerto Rico and the Application of Sovereign Immunity

   With the principles of sovereign immunity and the Eleventh Amendment in mind, the court now turns to the interesting and presently disputed question of whether Puerto Rico qualifies as a State for purposes of Eleventh Amendment immunity.

   For over a century, "[it has not been] open to controversy that, aside from the existence of some exception, the government which the organic act established in [Puerto Rico] is of such a nature as to come within the general rule exempting a government sovereign in its attributes from being sued without its consent." People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 273, 33 S. Ct. 352, 57 L. Ed. 507 (1913).  Citing the reasons underlying the organic act and the resulting sovereignty of the government of Puerto Rico, the Supreme Court held, prior to the establishment of the Commonwealth, that Puerto Rico enjoys the protections of common-law sovereign immunity. Id.  In addition, for the better part of a half century, the First Circuit has repeatedly held that, despite Puerto Rico's lack of formal statehood, "[t]he principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico." Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 777 n.7 (1st Cir. 1981); see, e.g., Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, 695 F.3d 83, 103 n.15 (1st Cir. 2012) ("This Circuit has consistently recognized that 'Puerto Rico enjoys the same immunity from suit that a State has under the Eleventh Amendment.'"); Igartúa v. United States, 626 F.3d 592, 598 (1st Cir. 2010) (noting that the "Eleventh Amendment restrictions on the jurisdiction of the federal courts have been extended to Puerto Rico"); Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 945 F.2d 10, 11 n.1 (1st Cir. 1991) ("It is settled that Puerto Rico is to be treated as a state for Eleventh Amendment purposes."), rev'd on other grounds, 506 U.S. 139

---

("Whether Puerto Rico is now considered a Territory or a State, for purposes of the specific question before us, makes little difference because each is included within [section] 1983.").

Civil No. 15-1096 (GAG)

(1993), remanded, 991 F.2d 935, 939 n.3 (1st Cir. 1993) ("We have consistently treated Puerto Rico as if it were a state for Eleventh Amendment purposes.").

First Circuit case law has grounded its reasoning in the ever-increasing autonomy of government of Puerto Rico, the full power of local self-determination similar to that of the States, and the resulting application by the courts of more constitutional provisions to the island than provisions that have not been applied.  See Igartúa, 626 F.3d at 598; Ezratty, 648 F.2d at 777 n.7 (citing Ursulich v. Puerto Rico National Guard, 384 F. Supp. 736 (D.C.P.R. 1974)).  Indeed, the circuit's reasoning has been that because Puerto Rico is entitled to common-law sovereign immunity, and the Eleventh Amendment is a mere exemplification of that immunity, then the Amendment's protection applies to the Commonwealth.  See Ezratty, 648 F.2d at 777 n.7 (citing Carreras Roena v. Camara De Comerciantes Mayoristas, Inc., 440 F. Supp. 217, 219 (D.P.R. 1976) aff'd sub nom. Carreras Roena v. Camara De Camerciantes Mayoristas, Inc., 559 F.2d 1201 (1st Cir. 1977) ("It has been previously held that the principle embodied by the Eleventh Amendment—that a sovereign cannot be sued in its own courts or in any other without its previous consent or permission—is fully applicable to Puerto Rico.") (citing Ursulich, 384 F. Supp. at 737).

Moreover, the state-like sovereignty of the Commonwealth of Puerto Rico has been addressed numerous times by the Supreme Court of the United States, the First Circuit, and the lower courts, albeit in contexts other than discussing the Eleventh Amendment.  For example, the Supreme Court treated the Commonwealth like a state in 1974, when it recognized that Public Law 600 and Puerto Rico's Constitution changed the island's status so that the Three-Judge Court Act, which is only applicable to the States, applied to Puerto Rico as well.  See Calero-Toledo v.

Civil No. 15-1096 (GAG)

Pearson Yacht Leasing Co., 416 U.S. 663, 670-76, 94 S. Ct. 2080, 2085, 40 L. Ed. 2d 452 (1974).[5]

In holding as such, the Court noted that before 1950, the courts had held that this statute did not

apply to Puerto Rico because its status was that of a mere territory.  Id. at 673; see also Rodriguez

v. Popular Democratic Party, 457 U.S. 1, 8, 102 S. Ct. 2194, 72 L. Ed. 2d 628 (1982) ("Puerto

Rico, like a state, is an autonomous political entity, 'sovereign over matters not ruled by the

Constitution.'") (citing Calero-Toledo, 416 U.S. at 673).  Two years later, while abstaining from

answering the question of whether Puerto Rico's status constitutes that of a territory or a state, the

Court emphasized the sovereign nature of the island's commonwealth status in holding that suits

brought pursuant to 42 U.S.C. § 1983 may be brought in the District of Puerto Rico.  See Flores de

Otero, 426 U.S. at 592-96 (noting that in 1952 "Puerto Rico assumed 'Commonwealth' status" and

that "the purpose of Congress in the 1950 and 1952 legislation was to accord Puerto Rico the

degree of autonomy and independence normal associated with States of the Union").

        In 1981, when addressing the question of whether 12 U.S.C. § 632 continues to confer

jurisdiction on the United States District Court for the District of Puerto Rico to hear cases filed by

federally chartered corporations involving banking transactions in Puerto Rico, the First Circuit

noted: "Puerto Rico's territorial status ended, of course, in 1952.  Thereafter it has been a

commonwealth with a particular status as framed in the Puerto Rican Federal Relations Act."  Ruiz

De Jesus, 644 F.2d at 911.  That same year, in Córdova & Simonpietri Insurance Agency v. Chase

Manhattan Bank N.A., the First Circuit held that the significant change in the degree of autonomy

exercised by Puerto Rico and its unique commonwealth status meant that it ceased being a territory

of the United States.  See Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.,

---

        [5] As a matter of personal privilege, the undersigned proudly notes as he did in United States v. Mercado-Flores, No. 14-466 GAG, 2015 WL 3764518 at *5 n.6 (D.P.R. June 4, 2015) that his father, Gustavo A. Gelpí Sr., argued this case before the United States Supreme Court.

Civil No. 15-1096 (GAG)

1   649 F.2d 36, 43-44 (1st Cir. 1981).   As such, the court held that the Sherman Act section

2   forbidding agreements "in restraint of trade or commerce in any Territory of the United States,"

3   but not in the States, did not apply to Puerto Rico.  Id.

4          Four years after Córdova, the First Circuit once again emphasized that "in 1952, Puerto

5   Rico ceased being a territory of the United States subject to the plenary powers of Congress as

6   provided in the Federal Constitution.  The authority exercised by the federal government emanated

7   thereafter from the compact itself."  United States v. Quinones, 758 F.2d 40, 42 (1st Cir. 1985); see

8   also United States v. Laboy-Torres, 553 F.3d 715, 721 (3d Cir. 2009) (O'Connor, J. (retired)) ("It

9   is thus not surprising that although Puerto Rico is not a state in the federal Union, it . . . seem[s] to

10  have become a State within a common and accepted meaning of the word." (internal quotation

11  marks omitted)).  But see Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 468 (1st Cir.

12  2000) (holding that under the plain meaning of the Defense Base Act, 42 U.S.C. § 1651, Puerto

13  Rico is an unincorporated territory that is covered by the Defense Base Act because it is still

14  subject to the plenary powers of Congress under the Territorial Clause).

15         Notably, in 1987, the First Circuit treated Puerto Rico like a State when it held that the

16  Commonwealth "is a sovereign separate from the United States for purposes of double jeopardy"

17  under the Fifth Amendment to the United States Constitution because its criminal laws emanate

18  from "the people of Puerto Rico," who engaged in an exercise of popular sovereignty in 1952 by

19  "organiz[ing] a government pursuant to a constitution of their own adoption."  United States v.

20  López Andino, 831 F.2d 1164, 1168, 1172 (1st Cir. 1987) (quoting Pub. L. No 81-600, 64 Stat 319

21  (1950)).  The court focused on the post-1950 Congressional legislation and the 1952 ratification of

22  Puerto Rico's constitution in emphasizing that while obviously not a state, the Commonwealth has

23  enjoyed "the degree of autonomy and independence normally associated with States of the Union."

24

Civil No. 15-1096 (GAG)

Id. (citing Flores de Otero, 426 U.S. at 594).  Relevant to the present case, Judge Juan R. Torruella filed a concurring opinion in López Andino, in which he flatly disagreed with the majority's discussion of the Commonwealth's constitutional status.  See López Andino, 831 F.2d at 1172 (Torruella, J., concurring).  In his concurrence, Judge Torruella concluded that the majority's holding that Puerto Rico is a "dual sovereign" with the United States for double jeopardy purposes "is incorrect because Puerto Rico is *constitutionally* a territory, thus lacking that separate sovereignty which would allow consecutive Puerto Rico/federal prosecutions for what would otherwise be the same offenses."  Id. (citing Puerto Rico v. Shell Co., 302 U.S. 253, 58 S. Ct. 167, 82 L. Ed. 235 (1937)) (emphasis in original).  He reasoned that because the Commonwealth is still a mere territory and thus its ultimate source of power is Congress, the dual sovereignty doctrine cannot apply because the rudiments of said doctrine apply "only where separate political entities which derive their power from different sources are involved."  Id. at 1175.  As such, Judge Torruella firmly disagreed with the majority view of the circuit which holds that Puerto Rico's change to a commonwealth was not a mere unilateral decision by Congress, but, rather, Public Law 600 and the Constitution were created "in the nature of a compact" with the people of Puerto Rico and the United States.

C.   Recent Developments in the Law Regarding Puerto Rico's Sovereignty

Turning now to recent cases published this year, the court will focus on the two decisions that Plaintiff claims have eroded the aforementioned law of this circuit.

i.   *Pueblo v. Sánchez Valle*

In March of this year, the Puerto Rico Supreme Court re-addressed the issue of whether the doctrine of dual sovereignty applies to Puerto Rico.  See Pueblo v. Sánchez Valle, No. 2013-68, 2015 TSPR 25, 2015 WL 1317010 (P.R. Mar. 20, 2015) (official translation).  The court overruled

Civil No. 15-1096 (GAG)

1  its prior holding in <u>Pueblo v. Castro García</u>, and held that, "pursuant to the constitutional

2  protection against double jeopardy, and because Puerto Rico is not a federal state, a person who

3  has been acquitted, convicted or prosecuted in federal court cannot be prosecuted for the same

4  offense in the Puerto Rico courts."   <u>Sánchez Valle</u>, 2015 WL 1317010 at 2 (pagination is for

5  certified translation that is attached to this opinion) (citing <u>Pueblo v. Castro Garcia</u>, 1988 WL

6  580837, 20 P.R. Offic. Trans. 775 (P.R. Mar. 31, 1988)).  In <u>Castro García</u>, the court held that the

7  Commonwealth of Puerto Rico's power to punish crime emanates not only from Congress but

8  from the consent of the people of Puerto Rico, and thus from its own delegation of power, making

9  Puerto Rico a sovereign for purposes of the doctrine of dual sovereignty.  See <u>Sánchez Valle</u>, 2015

10  WL 1317010 at 31-33; <u>Castro Garcia</u>, 20 P.R. Offic. Trans. at 795-804.  The court's reasoning was

11  similar to that of the many First Circuit cases addressing the sovereignty of the Commonwealth:

12  that it enjoys a degree of sovereignty on par with the sovereignty possessed by States of the Union

13  and that when the Constitution of the Commonwealth of Puerto Rico was established in 1952, the

14  island's political power emanated from the consent of the people of Puerto Rico.  <u>Id.</u> at 800-802.

15      In overruling <u>Castro Garcia</u>, the court thoroughly examined both First Circuit and Puerto

16  Rico case law regarding the principles of dual sovereignty, and the political status of pre and post-

17  Commonwealth of Puerto Rico and the accompanying judicial interpretations.  See <u>Sánchez Valle</u>,

18  2015 WL 1317010 at 29-61.  It then reeled back on decades of its own jurisprudence and reasoned

19  that the Federal Government and Puerto Rico are not "dual sovereigns" for federal double jeopardy

20  purposes because the Commonwealth's power to enforce its laws derives from the sovereign

21  authority delegated to it by Congress, and not from sovereign authority delegated by the people of

22  Puerto Rico when they adopted a Constitution in 1952.  <u>Id.</u> at 65-59.  In holding as such, the

23  Supreme Court of Puerto Rico recognized that its decision conflicts with the First Circuit's

24

Civil No. 15-1096 (GAG)

decision in United States v. López Andino and highlighted Judge Torruella's aforementioned concurrence in said case, as well as praised the Eleventh's Circuit's holding in United States v. Sánchez, in which that court rejected the majority's holding in López Andino in holding "substantially in accord with Judge Torruella's concurrence." Id. at 290-31 (citing United States v. Sanchez, 992 F.2d 1143, 1151 (11th Cir. 1993)).  Indeed, the court went as far as to praise the Eleventh Circuit's "exercise of intellectual honesty" in recognizing that the development of the Commonwealth of Puerto Rico had not granted courts a source of punitive authority derived from an inherent sovereignty.  Sánchez Valle, 2015 WL 1317010 at 30.

The Puerto Rico Supreme Court further acknowledged that the Commonwealth exists in a unique relationship with the United States unlike any relationship in its history, due to being the first territory whose citizens drafted their own Constitution in order to rule local affairs.  Id.  at 62. Nevertheless, the court stands by its decision that Puerto Rico's power to prosecute crimes emanates solely from the delegation by the United States of America, and is in no way derived by virtue of its own sovereignty.  The court concluded that the ratification of the Puerto Rico Constitution in 1952 in no way changed the foundation of the relationship between the United States and Puerto Rico and that Puerto Rico continues to be an unincorporated territory of the United States.  Id. at 65-68.[6]

In a concurring opinion, Chief Justice Fiol Matta flatly disagreed with the majority's application of the dual sovereignty doctrine as a matter of federal constitutional law.  Id. at 72-73. In such disagreement, the Chief Justice examined the same jurisprudence as the majority, and opined that "the drafting and ratification of our Constitution by the People of Puerto Rico was not

---

[6] "As we have seen, and contrary to the Native-American tribes or the states of the Union, **Puerto Rico never had original or prior sovereignty under which it delegated powers to Congress. It is the other way around**." Id. at 65 (emphasis in original).

Civil No. 15-1096 (GAG)

a marginal and insignificant event, as the Majority insists," but rather an exercise of popular sovereignty.  Id. at 131.  Therefore, she posited that, even though Puerto Rico is not a State, since the enactment of its constitution took effect in 1952, its "ultimate source of power and authority to create and punish crimes has been the People of Puerto Rico."  Id. at 132.  As such, the Double Jeopardy Clause of the Federal Constitution does not bar the respondents' prosecution by both Puerto Rico and federal authorities.  Id. at 156-57.  Nevertheless, the Chief Justice noted that she would have held that Puerto Rico should not recognize the dual sovereignty doctrine for purposes of its own constitutional prohibition on double jeopardy.  Id. at 180-90.

Lastly, Associate Justice Rodríguez Rodríguez "vigorously dissent[ed]" from the majority holding regarding the federal dual sovereignty analysis.  See id. at 191-242.  Calling the majority's opinion an "unfortunate decision, based more on ideology than on law," she warned that the same "could very well have a negative impact on the collaborative agreements between agencies of the government of the United States and Puerto Rico."  Id. at 194.  Justice Rodríguez Rodríguez further argued that the majority's decision "is incompatible with" the United States Supreme Court's dual sovereignty jurisprudence and decades of case law addressing the sovereignty of the Commonwealth of Puerto Rico.  Id. at 195-96.  "That should be enough," she noted, for the "Supreme Court to intervene in this case to bring the majority of this [c]ourt back to the fold of the United States Constitution."  Id. at 196.

Accordingly, the law of Puerto Rico now holds that a person who was prosecuted in federal court cannot be prosecuted for the same offence in the Puerto Rico courts because such would constitute a violation of the constitutional protection against double jeopardy, as provided in the Fifth Amendment to the Constitution of the United States.  See id. at 69.

Civil No. 15-1096 (GAG)

ii.     *Franklin California Tax-Free Trust v. Commonwealth of Puerto Rico*

Thereafter, in July of this year, the First Circuit addressed the contentious issue of whether section 903(1) of the United States Bankruptcy Code—a provision that ensures uniformity in the Code by prohibiting state municipal debt restructuring laws that bind creditors without their consent—preempts a locally promulgated law that allowed Puerto Rico's utilities to restructure their debt.  See Franklin California Tax-Free Trust v. Puerto Rico, No. 15-1218, 2015 WL 4079422 (1st Cir. July 6, 2015).  The case has its origins dating back to 1984, when Congress excluded Puerto Rico from the definition of "State" in the Bankruptcy Code for the purpose of "defining" a municipal debtor under Chapter 9, thereby depriving its municipalities, including utilities, from seeking federal bankruptcy relief under Chapter 9.  Id. at *1.  Facing a serious fiscal crisis and the inability to seek relief under Chapter 9, in June, 2014, the Commonwealth legislature promulgated "the Puerto Rico Public Corporation Debt Enforcement Recovery Act, which expressly provides different protections for creditors than does the federal chapter 9."  Id.

As a result, a group of bond holders who hold nearly two billion dollars of bonds issued by the Puerto Rico Electric Power Authority filed suit, seeking to enjoin the implementation of said law.  Id.  Upon consideration of the merits, the First Circuit affirmed the district court, which held that when Congress excluded Puerto Rico from Chapter 9 in 1984, it did not alter the effect of section 903(1), and thus said section preempted the Recovery Act, as 903(1) was intended to preempt and the Act would frustrate the purpose of said section.  Id. at *1, 7-8.  If the Commonwealth wishes to seek relief similar to that granted under Chapter 9, the majority stated that it should simply ask Congress for such relief.  Id. at *15.

Finally, the court addressed the argument by the Commonwealth that, "if section 903(1) bars the Recovery Act because it expressly preempts local municipal bankruptcy law, then it

16

Civil No. 15-1096 (GAG)

1    directly raises a constitutional question under the Tenth Amendment of whether [section] 903(1)

2    (and (2)) 'constitute[s] an impermissible interference with a state's control over its

3    municipalities.'" Id. at *14.  The court swiftly rejected this contention, stating that "[t]he limits of

4    the Tenth Amendment do not apply to Puerto Rico, which is '*constitutionally*' a territory, United

5    States v. López Andino, 831 F.2d 1164, 1172 (1st Cir. 1987) (Torruella, J., concurring), because

6    Puerto Rico's powers are not '[those] reserved to the States' but those specifically granted to it by

7    Congress under its constitution. . . .  Accordingly, that § 903(1) expressly preempts a Puerto Rico

8    law does not implicate these Tenth Amendment concerns."  Franklin, 2015 WL 4079422, at *14

9    (citing Davila-Perez v. Lockheed Martin Corp., 202 F.3d at 468 and Harris v. Rosario, 446 U.S.

10   651, 652, 100 S. Ct. 1929, 64 L. Ed. 2d 587 (1980)).

11            Judge Torruella concurred in the judgment, but wrote separately to articulate that he would

12   have held that "[n]ot only do [the 1984 Amendments] attempt to establish bankruptcy legislation

13   that is not uniform with regards to the rest of the United States, thus violating the uniformity

14   requirement of the Bankruptcy Clause of the Constitution, but they also contravene both the

15   Supreme Court's and this circuit's jurisprudence in that there exists no rational basis or clear

16   policy reasons for their enactment."   Franklin, 2015 WL 4079422, at *15 (Torruella, J.,

17   concurring) (footnote omitted).  Judge Torruella further stated that "to assume that the 1984

18   Amendments are a valid exercise of Congress's powers to manage the local financial affairs of

19   Puerto Rico's municipalities is inconsistent with this court's long-lasting Commonwealth-

20   endorsing case law [and took] issue with the majority's proposal that Puerto Rico simply ask

21   Congress for relief; such a suggestion is preposterous given Puerto Rico's exclusion from the

22   federal political process."  Id. at *16.

23

24

17

Civil No. 15-1096 (GAG)

D.   <u>Analysis of Present Issue</u>

The court now turns to Plaintiff's arguments in the present case. Although the court previously described Plaintiff's claims, it will articulate them now in more detail. Plaintiff argues as follows: (1) common-law sovereign immunity does not protect against liability under the laws of the federal government, only the Eleventh Amendment does; (2) because Puerto Rico is no longer recognized as a sovereign nor it does enjoy the rights under the Tenth Amendment, it necessarily follows that the Eleventh Amendment no longer applies; and (3) simply because the Commonwealth enjoys common-law immunity from suit does not mean that it enjoys Eleventh Amendment immunity. (Docket No. 23 at 10-13.)

i.   *Applicability of the Two Recent Cases*

To begin, the court notes that while the undersigned is mindful of the recent opinion of the Puerto Rico Supreme Court and gives it the utmost respect that it deserves, said court's decision in <u>Sánchez Valle</u> is not binding and does not constitute precedent for this court. Even if the court were to agree with that court's conclusion, it is the First Circuit that must revisit the issue and overrule itself, not the Puerto Rico Supreme Court. As such, although Plaintiff's claim—that Puerto Rico lacks the protection of sovereign immunity if it is no longer enjoys the dual sovereignty necessary for the application of the double jeopardy doctrine—is logically sound, the court must adhere to binding First Circuit precedent on this issue. See <u>Fed. Mar. Comm'n</u>, 535 U.S. at 751 (noting that the States' immunity from private suit is grounded upon the principle of dual sovereignty, which is "defining feature of our Nation's constitutional blueprint"). More so, it is interesting to note that the Commonwealth's Attorney General, César Miranda Rodríguez, and Solicitor General, Margarita Mercado Echegaray, adamantly refute the court's stance in <u>Sánchez</u>

Civil No. 15-1096 (GAG)

Valle and have filed for Writ of Certiorari to the United States Supreme Court.  See Petition for Writ of Certiorari, Pueblo v. Sánchez Valle, United States Supreme Court (No. 15-108).

Second, insofar as the First Circuit recently cited Judge's Torruella's concurrence in López Andino when it stated that the Tenth Amendment does not apply to Puerto Rico, contrary to Plaintiff's claim, it did not expressly overrule the majority opinion in López Andino.  While the language in the opinion may appear to have taken a step back in the decades of circuit opinions discussing the state-like sovereignty that the Commonwealth enjoys, said opinion did not indicate that it intended to overrule that precedent.  Indeed, in Jusino Mercado v. Commonwealth of Puerto Rico, the First Circuit, fully recognizing that the Commonwealth is not a State, but rather a territory, and thus still governed by the Territorial Clause, nevertheless noted that it "consistently [has] held that Puerto Rico's sovereign immunity in federal courts parallels the states' Eleventh Amendment immunity" because of the substantial measure of autonomy that it exercises over its own affairs.  See Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 38-9, 44 (1st Cir. 2000) (citing Harris v. Rosario, 446 U.S. 651, 651-52, 100 S. Ct. 1929 (1980) (per curiam)).[7]

Moreover, the undersigned recently acknowledged in United States v. Mercado-Flores, that "the Territorial Clause continues to be the principal source of federal power over non-state areas, which encompasses Puerto Rico, because it is not a State of the Union. . . .  Without said constitutional provision, Puerto Rico could not have become a commonwealth, nor ever be admitted as a State of the Union in the future."  United States v. Mercado-Flores, No. 14-466 GAG, 2015 WL 4132355, at *4 (D.P.R. July 8, 2015).  As such, despite the Supreme Court cases of Harris v. Rosario, 446 U.S. at 651-52 and Califano v. Torres, 435 U.S. 1, 98 S. Ct. 906, 55 L.

---

[7] The undersigned notes that he argued this case before the First Circuit as the then Solicitor General for the Commonwealth.

Civil No. 15-1096 (GAG)

Ed. 2d 65 (1978) (per curiam), the First Circuit has continued to recognize the ever-increasing sovereignty of the Commonwealth.

Accordingly, simply arguing that because Puerto Rico does not enjoy the protections of the Tenth Amendment due to its lack of formal statehood it cannot enjoy immunity under the Eleventh Amendment is a flawed premise.  As noted above, the Supreme Court and First Circuit have consistently considered Puerto Rico a State for purposes of constitutional and statutory interpretation in many cases, yet nevertheless do not consider it a State for other purposes.  Unless the First Circuit overrules its precedent which states that "[u]nder the compact between the people of Puerto Rico and the United States, Congress cannot amend the Puerto Rico Constitution unilaterally, and the government of Puerto Rico is no longer a federal government agency exercising delegated power," Quinones, 758 F.2d at 42, the cases holding that the Eleventh Amendment applies to Puerto Rico remain binding on this court.[8]

>           ii.     Discussion of Sovereign Immunity and the Eleventh Amendment

Lastly, the court now turns to Plaintiff's argument that although it is undisputed that Puerto Rico enjoys common-law sovereign immunity, the Eleventh Amendment expanded said immunity and thus is distinct from common-law immunity.  (Docket No. 23 at 10.)  As such, Plaintiff argues that because the First Circuit recently held that "Puerto Rico's powers are not '[those] reserved to the States' but those specifically granted to it by Congress under its constitution," Franklin, 2015 WL 4079422, at *14, and the Eleventh Amendment only applies to the States, it no longer can be considered to apply to Puerto Rico.  (Id. at 13.)

---

[8] Indeed, Judge Torruella, recently "reiterated the norm that Puerto Rico has authority to control its internal affairs."  See Franklin, 2015 WL 4079422 at *21 (Torruella, J. concurring).  Further, despite his position on Puerto Rico and double jeopardy, Judge Torruella concludes that the Eleventh Amendment immunity applies to Puerto Rico, even when considering Puerto Rico as a territory.  See Torrest-Alamo v. Puerto Rico, 502 F.3d 20, 24 (1st Cir. 2007).

Civil No. 15-1096 (GAG)

Contrary to Plaintiff's argument, however, the Supreme Court has articulated on numerous occasions that the Eleventh Amendment "is but one particular exemplification of [common-law] immunity." Fed. Mar. Comm'n, 535 U.S. at 753; Coeur d'Alene Tribe of Idaho, 521 U.S. 261 at 267-68 ("To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as *evidencing and exemplifying*, we have extended a State's protection from suit to suits brought by the State's own citizens.") (emphasis added). Indeed, as early as 1890, when determining whether the Eleventh Amendment allows for suits in federal court against a state by its own citizen, the Supreme Court examined scholarship from the constitutional debates and noted that "[a]ny such power as that of authorizing the federal judiciary to entertain suits by individuals against the states had been expressly disclaimed, and even resented, by the great defenders of the constitution while it was on its trial before the American people." Hans v. Louisiana, 134 U.S. at 12. As such, the Court has explained that the States' immunity from suit in federal court stems from the structure of the Constitution, and not just from the Eleventh Amendment, which was created purely in reaction to Chisholm. Id. at 11-12.

Therefore, even if the court was to entertain Plaintiff's argument that the First Circuit in Franklin recently eroded the established case law holding that Puerto Rico enjoys the protections of the Eleventh Amendment, the law of the land nevertheless remains that the island enjoys common-law sovereign immunity. See Rosaly y Castillo, 227 U.S. at 273. Indeed, as noted above, this has been binding law for over a century and applied with the same force for decades prior to the creation of the Commonwealth in 1952. As the Eleventh Amendment is a mere exemplification of the common-law immunity of the States, it necessarily follows that by enjoying the latter, Puerto Rico also enjoys the former. To the extent that Plaintiff quotes a Supreme Court opinion that states that "[o]ur understanding of common-law sovereign immunity does not protect

Civil No. 15-1096 (GAG)

against liability under the laws of a superior governmental authority," and, as such, without the Eleventh Amendment, Puerto Rico does not have immunity against a claim brought under federal law, the court highlights that Plaintiff's sole authority is a mere non-binding dissenting opinion. See Ngiraingas v. Sanchez, 495 U.S. 182, 205, 110 S. Ct. 1737, 109 L. Ed. 2d 163 (1990) (Brennan, J., dissenting); see also Alden, 527 U.S. at 732 ("We reject any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States.  When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States.").

Lastly, Plaintiff also relies upon the analysis of a Note published in the Yale Law Review for his proposition that Eleventh Amendment immunity is distinct from common-law immunity and, as such, the First Circuit's holdings applying the Eleventh Amendment to Puerto Rico have been flawed for decades.  (Docket No. 23 at 11 (citing Adam D. Chandler, Note, Puerto Rico's Eleventh Amendment Status Anxiety, 120 Yale L.J. 2183, 2191 (2011)).  Notably, the First Circuit recently acknowledged this article, which expressly targeted it and accused it of flawed reasoning, when it stated that "[t]he recycling of judicial error by the parroting of prior decisions without independent and thorough analysis has been properly dubbed 'a judicial game of 'telephone,' in an article specifically targeting the First Circuit."  See Igartua v. United States, 654 F.3d 99, 108 (1st Cir. 2011).  Interestingly, a year thereafter, the court once again reaffirmed that the Eleventh Amendment with full force to the Commonwealth.  See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, 695 F.3d 83, 103 n.15 (1st Cir. 2012).  Therefore, it is pellucidly clear that the circuit read the article, understood the author's proposition, and disagreed

Civil No. 15-1096 (GAG)

with it when it reaffirmed the application of the Eleventh Amendment to claims against the Commonwealth.

**III.   Conclusion**

Upon considering Plaintiff's submission and the pertinent law, the court hereby **DENIES** his Motion for Reconsideration at Docket No. 23.   Although the court flatly disagrees with Plaintiff's arguments, it takes this opportunity to note that the recent case law that he highlights has created a deep rift between the Puerto Rico and federal courts.   Although Sánchez Valle addressed the issue of dual sovereignty for purposes of double jeopardy, as noted above, dual sovereignty is an underlying principle of the application of sovereign immunity.   As a result, the present conflict between our courts is likely to result in mass confusion and erroneous decisions at many levels of the government.   Indeed, the Attorney General and Solicitor General of the Commonwealth recently highlighted this dichotomy in their Petition for Writ of Certiorari to the United States Supreme Court.   See Petition for Writ of Certiorari, Pueblo v. Sánchez Valle, United States Supreme Court, at 2.[9]   Furthermore, in light of the First Circuit's recent citation of Judge Torruella's concurrence in López Andino, while not overruling the majority in said case, the court can foresee even more confusion and split opinions on the issue of Puerto Rico's constitutional current status.   Notably, the United States government has taken a stance opposite to that of the

_____

[9] The court finds this conflict to be analogous to when State supreme courts publish decisions on the Fourth Amendment to the United States Constitution that are in conflict with the sister circuit courts of appeal.   Generally speaking, the Supreme Court is quick to grant Certiorari in order to establish consistency between the courts.   See, e.g., Florida v. J.L., 529 U.S. 266, 269, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) ("Seeking review in this Court, the State of Florida noted that the decision of the State's Supreme Court conflicts with decisions of other courts declaring similar searches compatible with the Fourth Amendment."); Mincey v. Arizona, 437 U.S. 385, 403-04, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (noting that "[i]f certiorari had not been granted, [the Court] would have left standing a decision of the State's highest court on a question of federal constitutional law that had been resolved in a directly opposing way by the highest federal court having special responsibility for the State."); see also cf. Popular Democratic Party v. Com. of Puerto Rico, 24 F. Supp. 2d 184, 195 (D.P.R. 1998) ("Any challenge or constitutional attack on the validity or legality of the 'Commonwealth' . . . is strictly dependent and solely based on a correct interpretation of the limited powers of self-governance granted under the Puerto Rico Federal Relations Act, 48 U.S.C. § 666(g)."). As such, the current constitutional status of the Commonwealth is purely a matter of federal law.

Civil No. 15-1096 (GAG)

Commonwealth of Puerto Rico, notwithstanding the status achieved in 1952, that the Commonwealth is still a mere territory of the United States, and even agrees with the Puerto Rico Supreme Court in Sánchez-Valle.  See Brief for United States, United States v. Mercado-Flores, (No. 14-466) Docket No. 43 at 7-8 ("Public Law 600, 64 Stat. 319 (1950) (codified at 48 U.S.C § 731b, et seq.) (authorizing Puerto Rico to enact a constitution for local self-government), and its sequel, Public Law 447, 66 Stat. 327 (1952) (resolution approving Puerto Rico's Constitution), did nothing to change the underlying constitutional status of Puerto Rico as an unincorporated territory, subordinated to Congress' plenary powers under the Territorial Clause.") (citing Igartua-De La Rosa v. United States, 417 F.3d 145, 160 n.21 (1st Cir. 2005) (Torruella, J., dissenting)); see also Brief for United States, United States v. Mercado-Flores, (No. 14-466) Docket No. 55 at 17 (on reconsideration) (citing Sánchez-Valle, 2015 WL 1317010 at *1 for support).  More so, given the Puerto Rico Supreme Court's recent holding, it would not be entirely frivolous for bondholders in light of the Commonwealth's multi-billion dollar debt to start filing lawsuits in federal court against the Commonwealth for the payment of said bonds.

Accordingly, the undersigned highly encourages the United States Supreme Court to grant Certiorari on this issue and end this inconsistency once and for all.[10]  This court alone has addressed the island's status issue multiple times this year alone.  See United States v. Mercado-Flores, No. 14-466 GAG, 2015 WL 3764518 (D.P.R. June 4, 2015) (statutory interpretation); United States v. Mercado-Flores, No. CRIM. 14-466 GAG, 2015 WL 4132355, at *1 (D.P.R. July 8, 2015) (reconsideration denied).  This issue is approaching the verge of a Mount Vesuvius-like eruption, and only the United States Supreme Court can cool the situation down before it ends up like Pompeii.

---

[10] This court, however, is not suggesting in any manner, who between the Puerto Rico Supreme Court and the First Circuit correctly interpreted federal law as to the constitutional status of the Commonwealth.

Civil No. 15-1096 (GAG)

**SO ORDERED.**

In San Juan, Puerto Rico this 11th day of August, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge